# UNITED STATES DISTRICT COURT
for the

Southern District of West Virginia

| | |
|---|---|
| United States of America<br>v.<br><br>MARK A. SMITH<br>*Defendant(s)* | )<br>)<br>) Case No. 3:10-mj-00038<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   from 04/05/09 to 04/06/09   in the county of   Cabell   in the Southern District of   West Virginia   , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 2261A(1) | Interstate Stalking |

This criminal complaint is based on these facts:

See attached Affidavit.

FILED
OCT 1 2 2010
TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

X Continued on the attached sheet.

*Complainant's signature*

S/A TODD BERRY, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Oct 12, 2010

*Judge's signature*

City and state:   Huntington, WV   Honorable Cheryl A. Eifert, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

STATE OF WEST VIRGINIA

COUNTY OF CABELL, to wit:

I, Todd A. Berry, being duly sworn, do hereby depose and say that:

1. I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed since October of 2006. I am presently assigned to the Huntington, West Virginia, Resident Agency. As a Special Agent with the FBI, I investigate violations of Federal law, including, but not limited to, interstate stalking. Prior to being employed as a Special Agent, I was employed as a member of the West Virginia State Police ("WVSP") for eight years. As a member of the WVSP, I investigated numerous violent crimes, including, murder, armed robbery, malicious wounding, malicious assault, felony possession of a firearm, domestic battery and domestic assault.

2. The information contained in this affidavit is provided for the limited purpose of establishing probable cause for the issuance of a complaint and an arrest warrant for MARK ALLEN SMITH ("Smith") for violating Title 18, United States Code, Section 2261A(1), interstate stalking. The facts set forth in this affidavit are based on my personal knowledge, information obtained during my participation in this investigation, a review of documents, and knowledge obtained from other individuals, including, but not limited to, law enforcement personnel. This

affidavit does not set forth each and every fact learned by me or other agents during the course of this investigation.

3. The investigation revealed that on or about April 5, 2009, to on or about April 6, 2009, Smith traveled from Newport, Kentucky to 960 Lucky Lane, Barboursville, Cabell County, West Virginia, with the intent to kill, injure, or harass, his ex-wife, Stacey Smith, and in the course of, or as a result of such travel, placed his ex-wife, Stacey Smith, in reasonable fear of death, or serious bodily injury, in violation of Title 18, United States Code, Section 2261A(1).

4. On April 5, 2009, Stacey Smith ("Stacey") drove to Smith's residence located at 100 River Boat Row, Newport, Kentucky, to pick up her five-year old son who was visiting his father, Smith. Stacey and her son returned to their residence in Barboursville, West Virginia later that same day.

5. After Stacey and her son arrived at their residence, Smith began sending text messages to her. Smith sent the first text message at approximately 9:13 p.m. and sent another 62 text messages in the following nine minutes. Stacey only replied twice. At approximately 9:31 p.m., Stacey received a cellular telephone call from Smith. A review of cellular records revealed that this phone call lasted approximately five minutes. During the call, Smith told Stacey that "he was coming down to kill her. That he would rather their son have no mom than a bad mom, that there was

no stopping him this time he was going to end it." Smith then ended the call. Stacey called Smith's cellular phone at 9:38 p.m. and tried to convince him not to come to her residence. A review of cellular records revealed that this phone call lasted approximately five minutes.

6. Stacey then called her father and he advised her to contact 911. At approximately 9:59 p.m, Stacey contacted Cabell County 911 and stated that "my ex husband is threatening to come down and kill me and he lives in Cincinnati and he's just now leaving." Stacey was advised that law enforcement personnel could not respond until Smith arrived at her residence.

7. Stacey called Smith's cellular phone at 10:31 p.m. and at 11:40 p.m. Smith did not answer either call and both calls went into Smith's voice mail. Because Stacey knew that Smith's cellular phone only had coverage in the Newport, Kentucky area, she feared that he had left Newport, Kentucky, and was on his way to her residence.

8. At approximately 12:40 a.m., on April 6, 2009, Stacey was sitting in the living room of her residence with her boyfriend, Jason Graham ("Graham") and noticed a car travel past her residence. A few minutes later, Stacey and Graham heard glass break in the back door window. Stacey ran to her son's bedroom and picked him up. She and her son hid in the bathroom. Stacey could hear Smith and Graham arguing. Stacey called Cabell County 911 and

advised that Smith was at her residence and that he was going to kill her.

9. After Smith broke the glass in the back door window, he tried to unlock the door. Graham grabbed knives from the kitchen drawer and cut Smith's arm in order to prevent him from unlocking the door. Smith stated, "I guess you took daddy's place." Smith also stated, "Sorry you have to be here, because you all are going to die." Smith asked to see his son. Smith left the rear of the residence and proceeded to break other glass windows in the residence. He threw a concrete object through his son's bedroom window which landed on his son's bed. Smith also broke the glass windows of Stacey's vehicle which was parked near the residence. He eventually came to the front door of the residence and stated, "Last chance to make this easy, open the door."

10. Officers from the Cabell County Sheriff's Office arrived at Stacey's residence at approximately 12:47 a.m. Smith was spotted near the east side of the residence and was immediately apprehended. He had cuts on his left forearm and was later transported to the Cabell Huntington Hospital.

11. Smith was subsequently charged in Cabell County, West Virginia with destruction of property and domestic assault. He was incarcerated at the Western Regional Jail from April 6, 2009, until September 23, 2010.

12. As a result of Smith's actions on April 5, 2009, and

April 6, 2009, Stacey and her son sought treatment at Prestera Center for approximately six months.

13. The investigation revealed that during a recorded phone call on May 7, 2009, Smith stated, "I went over to Stacey's house and uh made a mess of things." During a recorded phone call on May 14, 2009, Smith stated, "apparently because I crossed state lines and uh (unintelligible) filed a domestic order (unintelligible) it became a federal charge then."

14. On September 23, 2010, a Cabell County Magistrate granted Smith's attorney's request for a reduced bond and released Smith. Stacey was not apprised of Smith's release. She found out by checking the Western Regional Jail's website. Stacey immediately contacted the Cabell County Courts Victim Witness Coordinator regarding Smith's release. The FBI's Victim Specialist was subsequently notified that defendant had been released and arrangements were made for Stacey to be placed in protective custody.

15. The investigation further revealed that Smith and Stacey have had a long term relationship including a five-year marriage and shared custody of their young son since their divorce in 2008. The relationship also has a long history of domestic violence. According to court documents, Stacey has filed three domestic violence petitions against Smith. He also assaulted Stacey's mother.

16. According to reports from the Wayne County Sheriff's Department, and interviews with individuals, your affiant has learned that on or about August 13, 2006, Smith traveled from Proctorville, Ohio, to Huntington, West Virginia, with the intent to kill, injure, or harass Stacey, and in the course of, or as a result of such travel, placed Stacey in reasonable fear of death, or serious bodily injury, in violation of Title 18, United States Code, Section 2261A(1).

17. Prior to August 13, 2006, Stacey and her son were residing with Smith at her mother's residence in Huntington, West Virginia. On the morning of August 13, 2006, Smith advised Stacey that he wanted a divorce and then left Stacey's mother's residence. A short time later, Smith called Stacey and told her that he changed his mind. Smith went back to the residence and picked up Stacey and their son and took them to Stacey's father's residence in Proctorville, Ohio. Smith agreed to stay with Stacey's father so that he could look for a place for them to live. Stacey and her son returned to her mother's residence in Huntington, West Virginia. Later that same day, Smith called Stacey and told her that he was coming to get his family and that they had to be together. After Smith arrived at Stacey's mother's residence in Huntington, he became angry and broke out several windows in the residence. He also slammed his vehicle into Stacey's mother's vehicle. Stacey's father was present at Stacey's mother's

residence and threatened to shoot Smith if he did not calm down. Smith told Stacey's father that he was going to have to shoot him. Smith obtained a flare from his vehicle and attempted to light it. Local law enforcement officers arrived and Smith fled on foot. He was eventually apprehended by a member of the West Virginia State Police. Smith resisted arrest and was subdued by the use of pepper spray.

18. Smith was subsequently charged in Wayne County Circuit Court with felony destruction of property, domestic assault, fleeing, and battery of a police officer. On April 12, 2007, Smith pled guilty to misdemeanor destruction of property and domestic assault. He was sentenced to twelve months of imprisonment.

19. WHEREFORE, based on the above facts, your affiant asserts there is probable cause to believe that on or about April 5, 2009, to on or about April 6, 2009, MARK ALLEN SMITH traveled from Newport, Kentucky to 960 Lucky Lane, Barboursville, Cabell County, West Virginia, with the intent to kill, injure, or harass, his ex-wife, Stacey Smith, and in the course of, or as a result of such travel, placed his ex-wife, Stacey Smith, in reasonable fear of death, or serious bodily injury, in violation of Title 18, United States Code, Section 2261A(1).

Your affiant prays that a warrant be issued.

Further, your affiant sayeth naught.

_____
TODD A. BERRY, Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me this __12te__ day of October, 2010.

_____
HONORABLE CHERYL A. EIFERT
United States Magistrate Judge

8